AMY E. JACKS (SBN 155681)
amyejacks@sbcglobal.net
315 E. 8th St. #801
Los Angeles, CA 90014
Telephone (213) 489-9025
Facsimile (213) 489-9027

RICHARD P. LASTING (SBN 53950)
richardplasting@sbcglobal.net
315 E. 8th St. #801
Los Angeles, CA 90014
Telephone (213) 489-9025
Facsimile (213) 489-9027

Attorneys for Defendant
ANTOINE LAMONT JOHNSON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL DENNIS WILLIAMS<br>ANTOINE LAMONT JOHNSON<br>PATRICK HOLIFIELD and<br>LARRY JORDAN<br><br>Defendants. | CR. No. 05-920 RSWL<br><br>**DEFENDANT JOHNSON'S OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE TO INTRODUCE EVIDENCE PURSUANT TO FRE 804 (B)(6), FORFEITURE BY WRONGDOING** |

Defendant, ANTOINE JOHNSON, by and through his counsel, Amy E.

Jacks and Richard P. Lasting, hereby submits this opposition to the government's

Motion in Limine to Introduce Evidence Pursuant to Federal Rule of Evidence

804(B)(6), Forfeiture By Wrongdoing (CR 1392).

Dated February 10, 2010                Respectfully submitted,


/s/ Amy E. Jacks

AMY E. JACKS
RICHARD P. LASTING
Attorneys for Defendant
ANTOINE LAMONT JOHNSON

# I. INTRODUCTION

On Friday, February 5, 2010, at 5:08 pm, eleven (11) days after trial in this case commenced, the government emailed counsel its Motion in Limine to Introduce Evidence Pursuant to Federal Rule of Evidence 804 (B)(6), Forfeiture by Wrongdoing (CR 1392) ("Motion in Limine").  The defense received official notice from the Court that the Motion in Limine was filed early Saturday morning February 6, 2010.  The Motion in Limine asks this Court to permit the government to introduce "prior statements and identifications of Veronica Burgess on the ground that defendant Antoine Johnson has procured her unavailability for trial by wrongdoing..."

The government has been aware since as early as July 16, 2009, that Ms. Burgess intended to purposely absent herself from any trial in this case, the government never subpoenaed Ms. Burgess to attend any trial in this case and the government has known since August 24, 2009 that Ms. Burgess has expressed fear of being prosecuted and imprisoned for lying to federal agents and perjuring herself before a federal grand jury hearing evidence in this matter.  The government offers no explanation as to the reason its Motion in Limine was filed in such an untimely matter. It appears a planned effort to gain unfair tactical advantage in getting the Court to rule in its favor in a critical evidentiary ruling that directly impacts Mr. Johnson's Sixth Amendment Right to Confrontation under the United States Constitution.

The government's argument that it has proven the preconditions necessary to introduce Ms. Burgess' "prior statements" and "identifications" against Mr. Johnson pursuant to Fed. R. Evid. 804 (B)(6) ("Rule 804 (B)(6)") must fail for three independent reasons: (1) in her history of dealings with the government, Ms. Burgess made clear her intent to absent herself from the trial, prior to the August 2, 2009 date on which the defense was permitted to disclose her identity during its investigation and prior to the issuance of any threat; (2) the government's proffered

1

evidence fails to prove that Mr. Johnson engaged in any wrongdoing, whatsoever, with the intent of procuring Ms. Burgess' unavailability; and (3) defense investigation relating to Ms. Burgess and her statements to law enforcement was ongoing and, on the morning of August 2, 2009, her identity and the content of her statements was communicated to numerous individuals as part of the defense investigation. As discussed further herein, these communications, alone, could have resulted in the threat issued to Mr. Smith.

## II. ARGUMENT

**A.    Ms. Burgess clearly expressed her intent to absent herself from any trial prior to any threats being communicated to her boyfriend, Patrick Smith.**

The government argues that a threat was communicated to Ms. Burgess' boyfriend, Patrick Smith and that the threat made Ms. Burgess absent herself from the trial.[1]  In fact, as evidenced in the declarations of law enforcement, Ms. Burgess planned to absent herself from any trial weeks prior to the date the defense teams were permitted to disclose her identity during the course of their investigation.

According to the Declaration of Joseph O'Donnell ("O'Donnell Decl.") dated August 31, 2009 and filed in conjunction with the government's Opposition to Defendant Antoine Johnson's Motion for Reconsideration of Court's Ruling to Traverse Search Warrant of March 18, 2005, filed under seal (CR 1097), on July 16, 2009, Ms. Burgess personally met with Detective O'Donnell, ATF Special Agent Michael Halualani and the Assistant United States Attorneys prosecuting this case.  O'Donnell Decl. ¶ 4. Upon being informed that her identity as a witness would be disclosed at the end of the month, "...Ms. Burgess became very upset and

---

[1]  The government has not filed any declaration from Mr. Smith and, prior to August 3, 2009 does not appear to have had any contact with him, whatsoever, during the investigation of this case.  The government has not explained how, if at all, Mr. Smith's telephonic statements to Det. O'Donnell about yet additional hearsay statements from unidentified party(s) is properly admissible evidence for any purpose.

1  stated that she could not testify.  Ms. Burgess explained that she feared for her life

2  and the lives of her children if she testified against the Hoovers.  Ms. Burgess

3  stated that if she showed her face in the courtroom, she would be in serious

4  danger."  O'Donnell Decl. ¶ 4a.  Ms. Burgess told Det. O'Donnell that "the

5  government had just created 'a missing person.'"  O'Donnell Decl. ¶ 4.d.  Detective

6  O'Donnell did not subpoena her for court and did not re-contact her until July 30,

7  2009.  Ms. Burgess ignored messages left for her on that date.  O'Donnell Decl. ¶ 5

8  and Declaration of Joseph O'Donnell dated February 5, 2010 (CR 11392-6)

9  ("O'Donnell Decl. 2") ¶ 6.  From the declarations, it appears that the last personal

10  contact Det. O'Donnell had with Ms. Burgess was July 16, 2009, several weeks

11  before (1) August 2, 2009, on which the defense was permitted to discuss her

12  identity with others; and (2) August 3, 2009 at 8:00 pm when her boyfriend Patrick

13  Smith reported telephonically to Det. O'Donnell that he had spoken to a Hoover

14  gang member and been told that a "hit" had been placed on Ms. Burgess.

15  O'Donnell Decl. 2  ¶ 8.

16      Ms. Burgess was never lawfully subpoenaed  to attend the trial in this case.

17  Based on the comments of Mr. Smith, as reported in the declarations of Det.

18  O'Donnell, prior to any meeting between Ms. Burgess and members of Mr.

19  Johnson's defense team, Ms. Burgess was actively trying to avoid being

20  subpoenaed and refused a meeting with law enforcement when it was disclosed

21  that she, in fact, would be served.  O'Donnell Decl. ¶ 10.c.

22      In arguing that Ms. Burgess is avoiding the trial because she was threatened

23  the government ignores the fact that she was avoiding the trial prior to any threat.

24  The government also dismisses the information she communicated to Mr.

25  Johnson's defense team on August 4-5, 2009: that she had lied to federal agents on

26  numerous occasions; that she collaborated with them to falsify identification and

27  other evidence; and that she had perjured herself before the grand jury in

28  expectation of a financial windfall.  *See* Declaration of Christian Filipiak, dated

August 23, 2009, filed with Defendant Johnson's Supplemental Motion in Limine to Preclude Identification Evidence and Defendant Johnson's Motion for Reconsideration of Court's Ruling Denying Motion to Traverse Search Warrant of March 18, 2005 (CR 1079 ).

The government's position that Ms. Burgess was telling the truth to the government and the grand jury but lied to the defense on August 4-5, 2009 is contradicted by Ms. Burgess' work records[2], which show that she was at her office the morning of the alleged planning meeting that she described to government investigators and testified about in front of the grand jury. It is not surprising that an individual with criminal liability of Ms. Burgess is unwilling to come to court or knowingly make herself available to law enforcement for subpoena.

**B.    The government's assertion that Mr. Johnson engaged in wrongdoing to procure Ms. Burgess' absence is pure speculation.**

The government argument that Mr. Johnson engaged in wrongdoing by communicating from his cell in the MDC- Special Housing Unit ("SHU") an unknown message in an unknown manner to an unknown person for transmittal in another unknown manner to some other unknown person on August 2, 2009 is rank speculation.

All the government has shown in its flurry of declarations is that Mr. Johnson is housed in the SHU; that he received a legal visit on Sunday, August 2,

---

[2] As described in the Declarations of Amy E. Jacks and Christian Filipiak, filed under seal, the defense obtained these work records after meeting with Ms. Burgess. Upon being informed of the existence of such records, government investigators have obtained similar records and disclosed them as part of the discovery in this case. See Declaration of Amy E. Jacks ("Jacks Decl") ¶3, filed herewith.  These records establish she clocked into work at either 8:00 or 8:03 am on Wednesday, Thursday and Friday, February 25-27, 2004.  In her sworn testimony before the grand jury, Ms. Burgess said she witnessed a breakfast planning meeting at a restaurant on one of those mornings.

2009 from Mr. Lasting; that individuals, including Mr. Johnson, housed in the SHU can communicate through the vents and can send kites to other inmates; that prior to August 2, 2009, and throughout the pendency of this case, Mr. Johnson was interested in learning the identity of the government's Citizen Witnesses; and that Mr. Johnson's mother is familiar with Hoover gang members and has resided with a Hoover gang member named Edmund Woods.

This is not proof that Mr. Johnson communicated the witness' identities to anyone, on August 2, 2009 or any other date, with the intent to procure the witness' unavailability. The government has not produced anything other than conjecture and innuendo to support its assertion that: (1) Mr. Johnson talked on the vents after his visit with counsel on August 2, 2009; (2) that Mr. Johnson talked about the identity of government witnesses; (3) that Mr. Johnson talked to party(s) for the purpose of eliciting his/her/their help in passing a message to an unknown person to dissuade the witnesses from coming to court; (4) that the party(s) to whom Mr. Johnson purportedly talked actually passed a message; and (5) that the message was conveyed to other unknown individual(s) who caused a threat to be issued to Ms. Burgess' boyfriend.

The fact that Mr. Johnson's mother has and continues to associate with the Hoover gang and resides with a Hoover gang member is under no control of Mr. Johnson. The government has presented absolutely no evidence that he communicated with her, or anyone else besides Mr. Lasting, on August 2, 2009, period. Nor has it presented any evidence that any communication between Mr. Johnson and his mother, Ms. Williams, at any time, was for the purpose of procuring Ms. Burgess' unavailability or, for that matter, that it was intended to cause someone to communicate with Ms. Burgess' boyfriend, Patrick Smith, for

that purpose.[3]

Finally, while it is of little consequence to this discussion, the government's argument that Mr. Williams had no reason or opportunity to communicate to anyone regarding Ms. Burgess, is contradicted by the court record, the discovery materials and common sense.  The government argues that discovery emailed to defense counsel on July 31, 2009 reporting that Ms. Burgess could not identify Mr. Williams in a July 2009 photo identification procedure extinguished any motive Mr. Williams might have in preventing her trial testimony. The emailing of discovery materials to defense counsel does not demonstrate that the information contained therein was communicated to and acknowledged by Mr. Williams within the ensuing 48-72 hours.  Additionally, according to government reports provided as part of the discovery in the case, Ms. Burgess named and identified Mr.

_____

[3] The paucity of proof offered in this case sharply contrasts with the cases cited by the government in arguing for the application of the forfeiture by wrongdoing hearsay exception. *See, e.g., United States v. Scott*, 284 F.3d 758 (7th Cir. 2002) (Finding the only evidence with much force in proving a defendant's wrongdoing was testimony of a middle man who the defendant asked to communicate with the potential witness about not testifying, who arranged and observed a meeting between the defendant and the potential witness after the defendant was hesitant to accept the middle man's representations about his conversations with the potential witness, and to whom the defendant thereafter expressed satisfaction that the witness would not testify); *United States v. Zlatogur*, 271 F.3d 1025 (11th Cir. 2001) (witness fled the country and told government agent it was because she was threatened; two other government witnesses were threatened by defendants and a witness said that defendants had told her that they "took care of" the witness who fled the country); *United States v. White*, 116 F.3d 903, 916 (D.C. Cir. 1997) (defendant murdered witness against him while he was out on bail; murder proven by testimony of three percipient witnesses who identified the defendant and defendant told another witness "we took care of [murder victim]); and *United States v. Rivera*, 292 F.Supp.2d 827 (defendant's recorded telephone calls and letters demonstrated that he wanted government witness murdered; defendant instructed others as to how and when the murder should take place; and defendant gloated about the successful murder of the witness afterward).

Williams on prior occasions. See Jacks Decl. ¶4. Pursuant to Fed. R. Evid. 801(d)(1), the facts surrounding these prior identifications would continue to be admissible against Mr. Williams at trial, in the event Ms. Burgess testified. Contrary to the government's representation made in the Motion in Limine at p. 15 line 8-22, that only Mr. Johnson sought to suppress Ms. Burgess' testimony, Mr. Williams joined in Mr. Johnson's Motion. See Defendant Williams' Motion to Adopt Co-Defendant's Supplemental Motion in Limine to Preclude Identification Evidence (CR 1105). The Court granted this joinder. See Order dated 11/20/2009 (CR 1204). And, as outlined in the Declarations of Amy E. Jacks and Christian S. Filipiak, filed under seal, the government incorrectly argues that only Mr. Johnson has family members with connections to the Hoovers.

In making this observation, Mr. Johnson is not trying to argue that Mr. Williams committed a wrongdoing with the intent of procuring Ms. Burgess' unavailability. The evidence to support that conclusion is as lacking for Mr. Williams as it is for Mr. Johnson. What Mr. Johnson does want the Court to be aware of is that the government's attempt to portray Mr. Johnson as the sole person to whom its speculative analysis of wrongdoing applies is not a fair or correct interpretation of the facts.

**C.     Defense investigation relating to Ms. Burgess has been ongoing and as of the morning of August 2, 2009 and her identity and the content of her prior statements was discussed with numerous individuals.**

As described in the attached Declarations of Amy E. Jacks and Christian Filipiak, filed under seal, investigation into Ms. Burgess and the credibility of her statements has been ongoing. Pursuant to the terms of the Protective Order dated September 6, 2007 (CR 264) ("Protective Order"), 45 days prior to trial, the same day Mr. Johnson was entitled to learn her identity, Mr. Johnson's attorneys and investigators were permitted to contact Ms. Burgess, her co-workers and her family members and to discuss the content of her statements to law enforcement.

Although none of the witness contacts or interviews made by Mr. Johnson's defense team were conducted with the intention of causing Ms. Burgess to be threatened, the publication of her name and content of her statements to law enforcement may have traveled rapidly.  At the time, neither Mr. Filipiak or Ms. Jacks registered that the next day, August 3, 2009, was a day of celebration for Eight Trey Hoovers, that being the eighth month, third day of the year.  The timing of the disclosures of August 2, 2009 was a day the gang was engaged in planning its yearly celebration.[4]

In the Declaration of Michael T. Halualani, ("Halualani Decl.") (CR 1392-3), ATF Special Agent Halualani notes that through his contact with Hoover gang members, "...I have learned that the Hoovers, much like most gangs, do not respect individuals who cooperate with law enforcement.  These individuals are usually subject to being threatened, harmed, or killed by other gang members or associates." Halualani Decl. ¶ 2. In this paragraph, Agent Halualani admits the truth of what Ms. Burgess had expressed to law enforcement on July 16, 2009: that in her culture, simply being identified as a law enforcement cooperator can have consequences.  Assuming the veracity of the threat communicated to Patrick Smith, regarding his girlfriend, Ms. Burgess, there is no reason to conclude that the threat originated from a defendant or suspect in this case.  Simply being identified as a witness could have prompted the communication to Mr. Smith.

Mr. Smith also reported to Detective O'Donnell that he had received an additional communication from "the mother of one of the guys in jail looking at death," that he had met with her and that he and Ms. Burgess were going to

---

[4] Law enforcement is well aware of gang celebrations of culture holidays or "birthdays."  The phenomenon is described in the Declaration of Officer Carlos Gonzalez (#30428) dated March 2, 2005 and submitted in conjunction with the Application for the Hoover Gang Injunction.  Officer Gonzalez's declaration was provided by the government as part of the discovery in this case at Bates 24543-24562 and is submitted with this Opposition.

cooperate with the defense. The government attributes this communication to Mr. Smith, from someone's mother, to Mr. Johnson, again, in the absence of any affirmative proof.  As addressed in the Declarations of Amy E. Jacks and Christian Filipiak, filed under seal, the government's speculation is wrong.

Even if the Court were to assume, in light of the evidence to the contrary[5], that Mr. Johnson's mother, Veronica Williams was the person who contacted Mr. Smith on this occasion, there is no evidence that the communication was made with the knowledge of or at the direction of Mr. Johnson.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

---

[5] Extensive government investigation conducted since August 2009, and just disclosed on February 8, 2010 to the defense, has failed to produce any evidence of improper contact between Mr. Johnson's mother, Veronica Williams, and Mr. Smith or Ms. Burgess.  See O'Donnell Decl.2 ¶ 10-14. *See also* Declarations of Amy E. Jacks and Christian S. Filipiak, filed under seal.

### III. CONCLUSION

Mr. Johnson did not engage in any wrongdoing with the intent of procuring Ms. Burgess' unavailability; and the government "evidence" does not prove anything to the contrary.  The requirements of Rule 804 (B)(6) have not been met. United States Constitution Amendment VI guarantees Mr. Johnson the right to confront and cross-examine the witnesses against him.  Unless the government produces Ms. Burgess as a trial witness, subject to cross-examination, admission of Ms. Burgess prior "statements" and "identifications" violates this Constitutional right and should not be permitted.  Finally, for reasons discussed thoroughly in Defendant Johnson's Supplemental Motion in Limine to Preclude Identification Evidence, filed under seal (CR 1079), Ms. Burgess' prior statements and identifications are unreliable and should be excluded pursuant to Fed. R. Evid. 403 and *Ohio v. Roberts*, 448 U.S. 56 (1980).

DATED: February 10, 2010

Respectfully submitted,

/s/ Amy E. Jacks

AMY E. JACKS
RICHARD P. LASTING
Attorneys for Defendant
ANTOINE JOHNSON

## DECLARATION OF AMY E. JACKS

I, Amy E. Jacks, declare as follows

1. I am an attorney licensed to practice in the State of California and this Court. I am appointed by this Court to represent defendant Antoine Lamont Johnson.

2. Pursuant to the terms of the Protective Order dated September 6, 2007 (CR 264), the defense was prohibited from contacting the government's "Citizen Witnesses", their family members or co-workers or communicating their identities to anyone until 45 days prior to trial. Once we were within the 45 day period, we could contact the witnesses, their family members or co-workers and we were permitted to use the witness' names in conducting our investigation. As of August 2, 2009, trial was scheduled to begin September 15, 2009. Thus, August 2, 2009 commenced the 45 day window during which we were permitted to conduct this aspect of our investigation into these "Citizen Witnesses."

3. As part of our investigation into the truth of Ms. Burgess' statements to the government, we obtained her work records. These records show that on the mornings of Wednesday, Thursday and Friday, February 25-27, 2004, she was clocked into work. We have since been provided similar records at Bates 27321-5, retrieved by government investigators after the existence of the records was brought to the government's attention by filings made on behalf of Mr. Johnson.

4. I have reviewed the discovery in this case, including the prior reports related to Ms. Burgess alleged statements to law enforcement. On 5/3/2004 she reportedly identified "Treystone" aka Michael Williams as being present at the planning meeting; and on 12/30/2004 she reportedly selected "Treystone" aka Michael Williams' photograph from a photographic lineup.

//

//

//

11

21.  Although allowed by Protective Order ¶ 8(b)(i), we have not provided Mr. Johnson with redacted statements of Mr. Davie or Ms. Burgess.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 9th day of February, 2010 at Los Angeles, California.


/s/ Amy E. Jacks

Amy E. Jacks

## CERTIFICATE OF SERVICE

I, Amy E. Jacks, hereby declare:

That I am employed in the County of Los Angeles, State of California; that my business address is 315 E. 8th St. #801, Los Angeles, CA 90014; that I am over the age of eighteen and not a party to the within entitled action; that I am a member of the bar of this Court.

On February 10, 2010, I served a copy of:

**DEFENDANT JOHNSON'S OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE TO INTRODUCE EVIDENCE PURSUANT TO FRE 804 (B)(6), FORFEITURE BY WRONGDOING**

Service was:

[ ]  Placed in a sealed envelope and mailed via United States Mail, addressed as follows:
[ ]  By hand delivery addressed as follows:
[ ]  By facsimile as follows:
[ ]  By messenger as follows:
[x ]  By e-mail as follows:

AUSA Elizabeth Yang
Elizabeth.Yang@usdoj.gov
U.S. Attorney's Office
312 N. Spring St.
Los Angeles, CA 90012

AUSA Karen Meyer
Kim.Meyer@usdoj.gov
U.S. Attorney's Office
312 N. Spring St.
Los Angeles, CA 90012

Marcia Morrissey                          David R. Evans
MorrisseyMA@aol.com                       drlbrty@aol.com
2115 Main St.                             7462 N. Figueroa St. Suite 201
Santa Monica,CA 90405                     Los Angeles, CA 90041

Ellen Barry                               Richard Novak
Ellen@ellenbarrylaw.com                   richard@rgnlaw.com
316 W. 2nd St.                            16633 Ventura Blvd. Suite 1200
Los Angeles, CA 90012                     Encino, CA  91436

This Certificate is executed on February 10, 2010 at Los Angeles, California.  I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

/s/ Amy E. Jacks
Amy E. Jacks
Attorney at Law