AMY E. JACKS (SBN 155681)
amyejacks@sbcglobal.net
315 E. 8th St. #801
Los Angeles, CA 90014
Telephone (213) 489-9025
Facsimile (213) 489-9027

RICHARD P. LASTING (SBN 53950)
richardplasting@sbcglobal.net
315 E. 8th St. #801
Los Angeles, CA 90014
Telephone (213) 489-9025
Facsimile (213) 489-9027

Attorneys for Defendant
ANTOINE LAMONT JOHNSON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>      v.<br><br>MICHAEL DENNIS WILLIAMS<br>ANTOINE LAMONT JOHNSON<br>PATRICK HOLIFIELD and<br>LARRY JORDAN<br><br>            Defendants. | **CR. No. 05-920 RSWL**<br><br>DEFENDANT JOHNSON'S<br>POSITION RE: SENTENCING<br><br>DATE:   July 20, 2010<br>TIME:   10:00 am<br>COURT: Hon. Ronald S.W. Lew |

TO THE HONORABLE RONALD S.W. LEW, SENIOR UNITED STATES DISTRICT COURT JUDGE:

Defendant, ANTOINE JOHNSON, by and through his counsel, Amy E. Jacks and Richard P. Lasting, hereby respectfully presents his position regarding the sentence to be imposed following his convictions for 18 U.S.C. § 1951 (a) Conspiracy to Interfere With Commerce by Robbery; 18 U.S.C. § 1951 (a) Interference with Commerce by Robbery; and 18 U.S.C. 924 (c)(1)(A)(iii), (j)(1):

1  Use, Carry, Brandish and Discharge of a Firearm During a Crime of Violence
2  Causing Death.
3  Dated: June 24, 2010                    Respectfully submitted,
4                                          /s/ Amy E. Jacks
5                                          AMY E. JACKS
                                            RICHARD P. LASTING
6                                          Attorneys for Defendant
                                            ANTOINE LAMONT JOHNSON
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I. INTRODUCTION

# II. THE OFFENSE: OBJECTIONS AND ADDITIONS TO THE FACTUAL STATEMENTS CONTAINED WITHIN THE PRE-SENTENCE REPORT.

Mr. Johnson makes the following objections and additions to the factual statements regarding the offense contained withing the pre-sentence report:

Paragraph 7: Although Count Three alleged the special findings outlined in this paragraph, the jury was not asked to determine whether any of the special findings were, in fact, true. For that reason the following language should be added to the end of paragraph 7: "The jury was not asked and did not decide whether any of the alleged special findings were true."

Paragraph 9: This paragraph addresses an incident at the MDC on December 22, 2005 and states that Mr. Johnson "assaulted another inmate, resulting in a lock down of the unit." This characterization of the incident is misleading, when considered in light of discovery produced by the government in response to a specific request from Mr. Johnson.

A Memorandum from Warden Michael Benov dated December 27, 2005 (Bates 27148-9) states that the incident on December 22 was actually a continuing dispute from the night before. According to Warden Benov, Mr. Johnson was assaulted on December 21, 2005 by a group of Hispanic inmates, at least one of whom was armed with a weapon and attempted to attack Mr. Johnson with it. In a Memorandum prepared the date of the incident, Unit Manager Dave Taylor reported that the morning disturbance involved more than Mr. Johnson and another inmate. Taylor reported that approximately 10 black and 10 Hispanic inmates fighting with each other in the common area of the unit (Bates page 27413). According to another Memorandum from Operations Lieutenant K. Barnett (Bates page 27408) "...[I]t was determined that the cause of the fight was due to the

Hispanic Inmates trying to control the microwaves."

Paragraph 11: The "large scale disturbance" that occurred on April 19, 2008 involved most of the inmates on the unit and is captured on a digital recording. As depicted in digital recording, Mr. Johnson did not initiate the disturbance. He was attacked by Hispanic inmates and fought back in order to defend himself and other black inmates. During the incident, Mr. Johnson seized a pool ball and pool stick that were used by other inmates as weapons against him.

### III. THE DEFENDANT'S CRIMINAL HISTORY: OBJECTIONS AND ADDITIONS TO THE FACTUAL STATEMENTS CONTAINED WITHIN THE PRE-SENTENCE REPORT.

Paragraph 63: The sentence in case YA053592 was concurrent with case BA229589.

Paragraph 68: Mr. Johnson was never released from custody after his conviction on June 17, 2005 and could not have reported to the probation department as agreed. Five (5) days after agreeing to the state court probationary disposition, Mr. Johnson was taken into federal custody and accused of the crimes alleged in this case. The warrant issued because of Mr. Johnson's failure to do the impossible: report to the Los Angeles County Probation Department while he was in federal custody on this case.

Paragraph 77: The referenced incident was August 21, 2004. The alleged victim reported another inmate, not Mr. Johnson, cut his arm. According to the Los Angeles County Sheriff Department report (disclosed by the government at Bates 17982), LACSD Deputy Shull observed the four lacerations. He described them as approximately 1/16" deep and characterized two of the cuts as "superficial."

Paragraph 78: The warrant was issued because Mr. Johnson did not report to the probation department as ordered. Mr. Johnson was in federal custody and it was impossible for him to report to probation.

1         Paragraph 79: This paragraph misstates the events of March 27, 2001.  This
2 incident was the subject of Mr. Johnson's Notice of Motion and Motion to
3 Preclude Evidence of Future Danger (CR 980).  The police reports related thereto
4 were filed under seal as Exhibit 1 to that motion.   According to the reports of the
5 incident, Mr. Johnson was the passenger in a vehicle *shot at* by rival gang
6 members.  In it's reply, the government concedes this fact.  *See* Government's
7 Opposition (CR 998) at p. 5 line 20-22.  One eyewitness reported that the
8 passenger in the light vehicle, alleged to be Mr. Johnson, brandished what
9 appeared to be a firearm at the shooters in the dark vehicle after he was shot at.
10 The brandishing was in self defense and there was no further confirmation that the
11 object brandished was a firearm.  The vehicle in which Mr. Johnson was riding was
12 detained shortly after the incident and no firearm, whatsoever, was recovered from
13 the vehicle or its occupants.  After his arrest, the driver of the vehicle provided a
14 written statement to police stating that in self defense, he brandished a toy gun at
15 the individuals in the vehicle from which shots were fired.  No case was ever filed
16 against Mr. Johnson for this incident.

17         Paragraph 82: Mr. Johnson was found "Not Guilty" of the offenses charged
18 against him.  The jury rejected the "factual" scenario of the offense outlined in this
19 paragraph.  Mr. Johnson moves to strike everything after "On May 27, 2005,
20 following a jury trial, the defendant was found not guilty of counts one and four."

21         Paragraph 99: Mr. Johnson attempted to obtain a copy of his GED
22 Certificate for the Court so that his accomplishment could be verified.  Ms. Clark,
23 the head of the Education Department of the MDC-LA, who administered the test
24 and has access to the results thereof,  refused to provide Mr. Johnson's counsel
25 with a copy of the certificate and stated her intent to refuse to honor a release
26 signed by Mr. Johnson.  Mr. Johnson's counsel was informed she would have to
27 initiate a FOIA request for the information if she wanted to present it to the Court.
28

## IV.  THE 18 U.S.C. § 3553 (A) FACTORS

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as interpreted by the Supreme Court in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005) requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. 3553(a)(4) (Supp. 2004), but it permits the Court to tailor the sentence in light of other statutory concerns as well, see § 3553(a).  *Booker,* 125 S. Ct. at 757. Thus, sentencing courts must not give undue emphasis to the guidelines, rather they are to be viewed as one among a number of sentencing factors set forth in 18 U.S.C. § 3553(a).

The primary directive in Section 3553(a) is for a sentencing court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)...." The Court, in determining an appropriate sentence, must consider not only the nature and circumstances of the offense and the history and characteristics of the defendant; but also must be guided by the directive of Section 3553 (a)(2) which provides the need for the sentence imposed:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In regard to subsection (A) recognition that the punishment for the offense should be "just," Mr. Johnson directs the Court's consideration to the "punishment" imposed on government witness, Jamal Dunagan.  As the Court will recall, Mr. Dunagan was described by LAPD Office Andrew Paredes as: "the" shot

caller[1] for the Eight Trey Hoover gang; the individual that "runs the show for the Eight Trey Hoovers" and "whatever happens goes through him"; and a major narcotics dealer, who "supplies the 83 Hoovers with guns." *See* Declaration of Andrew Paredes, People v. Hoover and Trouble, Case No. BC330272 at p. 39-41.

During the course of his testimony in this case, Dunagan confirmed his status as a "career offender" making any new offense punishable by a mandatory life term. During the course of this trial, Dunagan was compelled to admit that he aided and abetted at least five capitally chargeable homicides, including the double murder of a young couple in the presence of their 11 year old son, the double murder of rival gang members who were "slipping"[2] and during which an infant was shot and injured, and the shooting of a rival drug dealer because he was encroaching on his crack dealing territory . Dunagan conceded that he planned, financed and committed a bank robbery in Memphis, TN. And, Dunagan begrudgingly told law enforcement that he aided and abetted the instant offenses: planning the crime with Derek Maddox, giving Maddox money for supplies needed to commit the crime and receiving proceeds from the commission of the crime.[3] Mr. Dunagan is not being prosecuted for ***any*** of this criminal activity; the government even gave him a pass for his instigation of  and participation in the

---

[1] A "shot caller" according to Officer Paredes, is "a gang member who commands respect and gives orders to the other gang members to commit the crimes he selects." *See* People v. Hoover and Trouble, Case No. BC330272, Declaration of Andrew Paredes at p. 33.

[2] I.e. at the wrong place at the wrong time.

[3] These are just the crimes that Mr. Johnson was permitted to inquire about at trial. A more complete recitation of Dunagan's substantial criminal activities is contained in Defendant Johnson's Opposition to Government's Motion in Limine to Preclude "Improper Impeachment of Government Cooperating Witnesses." In the Alternative, Motion to Permit Proper Impeachment of Government Cooperating Witnesses (CR 927).

1  offenses for which Mr. Johnson was convicted.

2      The only crime for which Mr. Dunagan received any imprisonment was
3  Possession with Intent to Distribute Cocaine Base.  On May 10, 2010, in Case No.
4  CR-06-951-JFW, Dunagan was sentenced to a term of 165 months for that offense.
5  He will be released in less than six (6) years.

6      Dunagan's repeated violent criminal conduct, his criminal sophistication and
7  influence and his lengthy criminal history are extremely aggravated.  He is a
8  dangerous individual who has repeatedly manipulated and exploited young men
9  reared in the most egregious inner-city poverty. His history of using and mocking
10 the criminal justice system is well documented throughout the record of this case.
11 Yet, with the government's blessing, he received a sentence substantially less than
12 life in federal prison.  Certainly these facts merit consideration in the Court's
13 pronouncement of judgment.

14

15 Dated this 24th day of June, 2010.              Respectfully submitted,

16                                                 /s/ Amy E. Jacks

17                                                 AMY E. JACKS
                                                   RICHARD P. LASTING
18                                                 Attorneys for Defendant
                                                   ANTOINE LAMONT JOHNSON

# CERTIFICATE OF SERVICE

I, Amy E. Jacks, hereby declare:

That I am employed in the County of Los Angeles, State of California; that my business address is 315 E. 8th St. #801, Los Angeles, CA 90014; that I am over the age of eighteen and not a party to the within entitled action; that I am a member of the bar of this Court.

On June 24, 2010, I served a copy of:

DEFENDANT JOHNSON'S POSITION RE: SENTENCING

Service was:

[ ]   Placed in a sealed envelope and mailed via United States Mail, addressed as follows:
[ ]   By hand delivery addressed as follows:
[ ]   By facsimile as follows:
[ ]   By messenger as follows:
[x]   By e-mail as follows:

AUSA Elizabeth Yang  
Elizabeth.Yang@usdoj.gov  
U.S. Attorney's Office  
312 N. Spring St.  
Los Angeles, CA 90012

Tami Keller, USPO  
11827 Ventura Blvd.  
Studio City, CA 91604

AUSA Karen Meyer  
Kim.Meyer@usdoj.gov  
U.S. Attorney's Office  
312 N. Spring St.  
Los Angeles, CA 90012

This Certificate is executed on June 24, 2010 at Los Angeles, California. I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

/s/ Amy E. Jacks  
Amy E. Jacks  
Attorney at Law