```
 1 │ ANDRÉ BIROTTE JR.
   │ United States Attorney
 2 │ CHRISTINE C. EWELL
   │ Assistant United States Attorney
 3 │ Chief, Criminal Division
   │ KAREN I. MEYER (Cal. Bar No. 220554)
 4 │ ELIZABETH R. YANG (Cal. Bar No. 196461)
   │ Assistant United States Attorneys
 5 │ Violent and Organized Crime Section
   │      1500 United States Courthouse
 6 │      312 North Spring Street
   │      Los Angeles, California 90012
 7 │      Telephone:  (213) 894-8559/1785
   │      Facsimile:  (213) 894-3713
 8 │      E-mail:  Kim.Meyer@usdoj.gov
   │               Elizabeth.Yang@usdoj.gov
 9 │
   │ Attorney for Plaintiff
10 │ UNITED STATES OF AMERICA
```

(Filing attorneys block above)

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) CR No. 05-920(A)-RSWL |
|---|---|
| Plaintiff, | ) <u>GOVERNMENT'S (1) POSITION</u> <u>RE: PRESENTENCE REPORT/</u> <u>SENTENCING FACTORS FOR</u> |
| v. | <u>DEFENDANT ANTOINE LAMONT</u> <u>JOHNSON, AND (2) RESPONSE TO</u> |
| ANTOINE LAMONT JOHNSON, | <u>DEFENDANT JOHNSON'S POSITION</u> <u>RE: SENTENCING; EXHIBITS</u> |
| Defendant. | Date: August 13, 2010 |
|  | Time: 10:00 a.m. |

Plaintiff United States of America respectfully submits its (1) sentencing position regarding defendant Antoine Lamont Johnson ("defendant"), and (2) response to defendant Johnson's Position re: Sentencing.

///

///

///

///

The government's position and response is based on the attached memorandum and exhibits, the Presentence Report prepared for defendant Johnson, the files, records, and transcripts in this case, and any further evidence or argument presented at the sentencing hearing.

DATED: July 20, 2010               Respectfully submitted,

                                   ANDRÉ BIROTTE JR.
                                   United States Attorney

                                   CHRISTINE C. EWELL
                                   Assistant United States Attorney
                                   Chief, Criminal Division


                                             /s/
                                   KAREN I. MEYER
                                   ELIZABETH R. YANG
                                   Assistant United States Attorneys

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

PAGE

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . 1

II. DEFENDANT JOHNSON'S PRESENTENCE REPORT . . . . . . . . . . 2

    A. Government's Objections, Corrections,
       And/Or Comments To PSR . . . . . . . . . . . . . . . . . 2

       1. The Offense Conduct Section . . . . . . . . . . . 2

       2. Adjustment for Obstruction of
          Justice Section . . . . . . . . . . . . . . . . . 3

       3. The Offense Level Computation Section . . . . . . 3

    B. Response To Defendant Johnson's Corrections
       And/Or Comments To PSR . . . . . . . . . . . . . . . . . 4

    C. Advisory Sentencing Guideline Calculation . . . . . . 9

III. 18 U.S.C. § 3553(a) ANALYSIS . . . . . . . . . . . . . 10

    A. Nature And Circumstances Of
       The Offense . . . . . . . . . . . . . . . . . . . . . 12

    B. History And Characteristics Of
       The Defendant . . . . . . . . . . . . . . . . . . . . 12

    C. Need For The Sentence Contemplated . . . . . . . . . 13

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 15

Table of Authorities . . . . . . . . . . . . . . . . . . . ii

**TABLE OF AUTHORITIES**

**PAGE(S)**

**Federal Cases:**

United States v. Booker,
    543 U.S. 220 (2005) . . . . . . . . . . . . . . . . . . . 10

United States v. Cantrell,
    433 F.3d 1269 (9th Cir. 2006) . . . . . . . . . . . . . . 10

United States v. Coonce,
    961 F.2d 1268 (7th Cir. 1992) . . . . . . . . . . . . . . .5

United States v. Doe,
    488 F.3d 1154 (9th Cir. 2007) . . . . . . . . . . . . . . .5

United States v. Karterman,
    60 F.3d 576 (9th Cir. 1995) . . . . . . . . . . . . . . . .5

United States v. Rigby,
    896 F.2d 392 (9th Cir. 1990) . . . . . . . . . . . . . . . 4

United States v. Rogers,
    119 F.3d 1377 (9th Cir. 1997) . . . . . . . . . . . . . . .5

United States v. Tam,
    240 F.3d 797 (9th Cir. 2001) . . . . . . . . . . . . . . . 5

United States v. Treadwell,
    593 F.3d 990 (9th Cir. Jan. 28, 2010) . . . . . . . . . . 11

**Federal Statutes:**

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . .passim

**Federal Rules:**

Fed. R. Crim. P. 32(i)(3)(B) . . . . . . . . . . . . . . . . .4

**U.S.S.G.:**

App. A . . . . . . . . . . . . . . . . . . . . . . . . . . .4

§ 2A1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . 4

§ 3C1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**I.**

**INTRODUCTION**

On March 11, 2010, a jury convicted defendant Antoine Lamont Johnson of conspiracy to commit Hobbs Act robbery (18 U.S.C. § 1951(a)), Hobbs Act robbery (18 U.S.C. § 1951(a)), and using, carrying, brandishing, and discharging a firearm during a crime of violence causing the death of Evelio Suarez, Jr. (18 U.S.C. §§ 924(c)(1)(A), (j)(1)).  These convictions resulted from defendant Johnson's commission of the March 1, 2004 robbery of an Armored Transport Systems armored truck and the shooting death of one of the guards, Mr. Suarez.

More specifically, the evidence presented at trial[1] established that defendant Johnson and others, armed with several loaded firearms, laid in wait for the Armored Transport Systems truck to arrive at the bank; that upon the truck's arrival and as Mr. Suarez unloaded money from the back of the truck for delivery to the bank, defendant Johnson and his co-conspirators opened fired on the truck and Mr. Suarez; that defendant Johnson and his co-conspirators gave no warning before firing approximately 52 rounds; that defendant Johnson, who was wearing a Rastafarian wig, knelt on the ground behind the truck and pointed a Leinad 9mm handgun directly at Mr. Suarez; that two projectiles recovered from Mr. Suarez's bulletproof vest matched the Leinad 9mm handgun; and that once Mr. Suarez was gunned down, defendant

---

[1] Because this Court presided over the trial as well as the extensive pre-trial litigation that preceded trial, the government will not go into great detail in recounting the relevant facts.

Johnson and his co-conspirators took money bags from the truck as Mr. Suarez lay dying in the back of the truck.

For this conduct and the resulting convictions, defendant Johnson faces an advisory Guidelines sentence as well as a statutory maximum punishment of 20 years imprisonment for each Section 1951 conviction, an advisory Guidelines sentence of LIFE imprisonment for the Section 924(c) conviction, and a statutory maximum punishment of LIFE imprisonment for the Section 924 conviction.  To account for the senseless and cold-blooded nature of these crimes and defendant Johnson's history of violence, the government respectfully submits that a LIFE sentence is the only appropriate and just sentence in this case.

**II.**

**DEFENDANT JOHNSON'S PRESENTENCE REPORT**

A.   Government's Objections, Corrections, And/Or Comments To PSR

   1.   The Offense Conduct Section

      Page 2:  The evidence presented at trial established that defendant Johnson is also known by the alias/moniker of "OK."

      Page 6, Paragraph 7:  The government withdrew its Notice of Intent to Seek the Death Penalty against defendant Johnson prior to the selection and empanelment of the jury.  Accordingly, the special findings set forth in the First Superseding Indictment (and reproduced at paragraph 7 of the PSR) did not apply at trial.

      Page 8, Paragraph 16:  The evidence presented at trial established that the stolen Honda, which was parked in the bank parking lot, was dark blue and not gray.

<u>Page 8, Paragraphs 17-19</u>:  The government did not present evidence at defendant Johnson's trial that co-defendant Jordan wore latex gloves (¶ 17) or was among the group of robbers who approached the armored truck and subsequently jumped into and out of the blue van parked in front of a video store (¶¶ 18-19).

    2.   <u>Adjustment for Obstruction of Justice Section</u>

<u>Page 9, Paragraph 25</u>:  On February 23, 2010, this Court granted the government's Motion <u>In Limine</u> to Introduce Evidence Pursuant to Fed. R. Evid. 804(b)(6), Forfeiture by Wrongdoing, finding that the government had proven by a preponderance of the evidence that defendant Johnson had engaged in wrongdoing intended to procure the unavailability of a witness, Veronica Burgess, for testimony at his trial.  <u>See</u> Court's Order, dated 2/23/10 (CR 1460).  This same conduct would support application of the 2-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1.  <u>See</u> Application Note 4 (citing as an example of covered conduct "threatening, intimidating, or otherwise unlawfully influencing a [] witness, [] directly or indirectly, or attempting to do so").

The government does not, however, seek application of this enhancement because, as set forth below, the resulting guideline range without the enhancement is LIFE imprisonment and thus, application of this enhancement would make no appreciable difference in the sentencing calculations.

    3.   <u>The Offense Level Computation Section</u>

In this section, the Probation Officer did not assign a base offense level for Count Three.  A violation of 18 U.S.C.

§§ 924(c)(1)(A), (j)(1) is, however, covered by U.S.S.G. §§ 2A1.1 or 2A1.2 where the victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111. See U.S.S.G. App. A. Moreover, Section 2A1.1 applies if the murder was committed during the course of a robbery.

Here, the jury specifically found that the death of Evelio Suarez, Jr. was caused by defendant Johnson's use, carrying, brandishing, and discharging of a firearm during and in relation to the robbery and that Mr. Suarez's death constituted a killing committed in the perpetration of a robbery. See Verdict Form (CR 1501). Accordingly, Section 2A1.1 squarely applies and defendant Johnson should be assigned a base offense level of 43 for his conviction on Count Three.

Irrespective of criminal history category, the corresponding Guideline range for Count Three would therefore be LIFE imprisonment.

B.  Response To Defendant Johnson's Corrections, And/Or Comments To PSR

Federal Rule of Criminal Procedure 32 requires that the court "for any disputed portion of the presentence report . . . rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). A district court complies with Rule 32(i) so long as it "make[s] clear on the record its resolution of all disputed matters." United States v. Rigby, 896 F.2d 392, 394 (9th Cir. 1990); United States v. Karterman, 60 F.3d 576, 583

(9th Cir. 1995) (affirming sentence because court first identified the matter in dispute, and then resolved the dispute). "[T]here are no 'magic words' a court must use" to comply with Rule 32. United States v. Coonce, 961 F.2d 1268, 1278 (7th Cir. 1992).

The Ninth Circuit has held that strict compliance with Rule 32 is necessary, but has also recognized "that the rule is complied with where the district court expressly adopts the position of either party to the dispute," such as by adopting the statements or position of the presentence report. United States v. Doe, 488 F.3d 1154, 1158 (9th Cir. 2007); see also United States v. Tam, 240 F.3d 797, 804 (9th Cir. 2001) (when district court adopts the findings of a PSR, the court satisfies its burden of making "findings" under Rule 32(i)); United States v. Rogers, 119 F.3d 1377, 1385 (9th Cir. 1997) (finding Rule 32 requirements satisfied where a resolution of a factual dispute was "implicit" in the court's statements).

In the instant case, defendant Johnson raises several "objections" to the PSR. Because most of his objections are simply disagreements with how the PSR characterizes or describes certain events, the alleged disputes raised by defendant Johnson's objections are easily resolved. The government addresses each in turn below.

    1.    Paragraph 7: See Section A.1. on page 2, above.

    2.    Paragraph 9: While defendant Johnson objects to the Probation Officer's characterization of the December 22, 2005 incident at MDC as misleading, notably, defendant Johnson does not dispute that he did in fact assault another inmate and that

that assault instigated a disturbance which resulted in the lockdown of the unit. <u>See</u> reports of incident, attached hereto as Exhibit A.[2]

3. <u>Paragraph 11</u>: Again, defendant Johnson does not dispute that he participated in a large scale disturbance at MDC on April 19, 2008, which resulted in the lockdown of the unit for more than three days. Defendant Johnson's self-serving characterization that he simply "fought back to protect himself and other black inmates"[3] does not detract from the fact that he was captured on the digital recording hitting another inmate, taunting and throwing multiple objects at Hispanic inmates, and wielding a pool ball in a sock and a pool stick as weapons.[4]

4. <u>Paragraph 63</u>: Defendant Johnson is correct that his sentence in Case No. YA053592 was ordered to run concurrent to the sentence in Case No. BA229589, not YA053592.

---

[2] The copies of the reports attached hereto have been redacted to protect the identity of the victim and other inmates referenced therein.

[3] Notably, this claim of "self-defense" is a familiar but not necessarily supported refrain throughout defendant Johnson's objections to the PSR's descriptions of his various incidents of criminal conduct. <u>See, e.g.</u>, Def.'s Pos. re: Sentencing at 3 (Objection to Paragraph 9), 5 (Objection to Paragraph 79).

[4] In fact, in the video recording of the riot, filed <u>under seal</u> as Exhibit B to co-defendant Michael Williams' Sentencing Memorandum, defendant Johnson is seen at the forefront of the black inmates, taunting the Hispanic inmates and wielding a weapon. Further corroboration of defendant Johnson's role in the riot can be found in the SIS Investigation Report of the riot, which is attached as Exhibit A to the Government's Sentencing Position for co-defendant Williams.

5. <u>Paragraph 68</u>: Despite defendant Johnson's comments to this paragraph, defendant Johnson does not dispute that he sustained the conviction as described in paragraph 67 or that a bench warrant was issued and remains outstanding.

6. <u>Paragraph 77</u>: Defendant Johnson is correct that the date of this incident was August 21, 2004. Defendant Johnson is also correct that the victim reported that another inmate, not defendant Johnson, attempted to cut out the tattoo from his upper right arm. Defendant Johnson fails to mention, however, that the victim also reported that defendant Johnson and another inmate held him down on the floor and beat him on his face, allowing the other inmate to attempt to slice the tattoo off his arm. Finally, the Los Angeles County Sheriff's Department report on which defendant Johnson relies also notes that the four lacerations were "approximately six inches long" and "approximately 1/16th of an inch deep and wide" and that "approximately eighteen square inches of flesh would have had to have been cut out[] to remove the tattoo in it's [sic] entirety." <u>See also</u> reports of incident and photographs of victim's injuries, attached hereto as Exhibit B.[5]

7. <u>Paragraph 78</u>: Again, it is undisputed that a bench warrant was issued in Case No. BA 275148 and remains outstanding.

8. <u>Paragraph 79</u>: The Probation Officer does not misstate the events of March 27, 2001, in this paragraph. The law

---

[5] The copies of the reports attached hereto have been redacted to protect the identity of the victim and other inmates referenced therein.

enforcement reports of the incident[6] confirm that a shooting occurred at the Hawthorne DMV office as a result of a dispute between members of the Eight Trey (83) Hoover Gangsters and the 87 Gangster Crips; that after the parties left the DMV, the 87 Gangster Crip gang members went to their (dark-colored) car and defendant Johnson and his fellow Eight Trey Hoover gang member went to their (lighter-colored) car; that the 87 Gangster Crip gang members began shooting at the (lighter-colored) car in which defendant Johnson was a passenger; and that an eyewitness identified defendant Johnson as pointing a semi-automatic weapon out of the right front passenger window of the lighter-colored car as he and his fellow Eight Trey Hoover gang member chased the dark-colored car into the street.

9.   Paragraph 82:  None of the facts in this paragraph to which defendant Johnson objects are inaccurate.  The fact that defendant Johnson was found "not guilty" of the offenses charged against him stemming from this May 14, 2004 shooting does not mean that "[t]he jury rejected the 'factual' scenario of the offense outlined in this paragraph" (Def.'s Pos. at 5), nor does it mean that the Probation Officer inaccurately described the shooting incident, the victims' identifications of defendant Johnson as the shooter during the investigation,[7] or the execution

---

[6] Those reports were filed under seal as Exhibit 1 to defendant Johnson's Motion to Preclude Evidence of Future Danger. (CR 980).

[7] According to Detective Michael Valento of the Los Angeles County Sheriff's Department, who investigated the May 14, 2004 shooting, despite their earlier identifications of defendant Johnson as the shooter, the victims recanted at trial.

8

of defendant Johnson's arrest warrant. It simply means that the jury found that the State had not proven its case beyond a reasonable doubt.

10. Paragraph 99: The government has no information as to this assertion.

C.   Advisory Sentencing Guideline Calculation

The government does not object to the material information and the advisory sentencing guideline calculations contained in the PSR (except as noted above and indicated below in **bold** for Count Three). Neither does defendant Johnson. See generally Def.'s Pos. Accordingly, the government respectfully requests that the Court calculate defendant Johnson's total offense level as follows:

*Counts One and Two*

| | |
|---|---|
| Base Offense Level: | 43 |
| Total Offense Level: | 43 |
| Criminal History Category: | V |
| Guideline Range: | 480 months[8] |

***Count Three***

| | |
|---|---|
| **Base Offense Level:** | **43** |
| **Total Offense Level:**[9] | **43** |

---

[8] Although the corresponding Guideline range for a total offense level of 43 (irrespective of criminal history category) is LIFE imprisonment, the sentence for Counts One and Two cannot exceed the statutory maximum of 20 years for each count. Thus, the listed Guideline range is 480 months, the total statutory maximum for Counts One and Two.

[9] No multi-count adjustment has been applied because the offense level for Counts One and Two is the same as the offense level for Count Three and thus, there would be no increase in

| | |
|---|---|
| **Criminal History Category:** | **V** |
| **Guideline Range:** | **LIFE** |
| Mandatory Restitution: | $436,000 |
| Supervised Release: | 3-5 years |
| Special Assessments: | $300 |

The government further respectfully requests that, after considering these calculations, along the other factors set forth at 18 U.S.C. § 3553(a) and discussed more fully below, the Court sentence defendant Johnson to a term of LIFE imprisonment.

### III.
### 18 U.S.C. § 3553(a) ANALYSIS

The law provides that sentencing courts must start with the sentence advised by the Sentencing Guidelines. <u>United States v. Booker</u>, 543 U.S. 220, 264 (2005) ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."); <u>United States v. Cantrell</u>, 433 F.3d 1269, 1279 (9th Cir. 2006) (stressing that "district courts still must consult the Guidelines and take them into account when sentencing, even though they now have the discretion to impose non-Guidelines sentences"). Thus, the "starting point" here in determining the appropriate sentence is the advisory range of LIFE imprisonment. <u>See</u> <u>Cantrell</u>, 433 F.3d at 1280.

---

offense level under U.S.S.G. § 3D1.4.

Pursuant to 18 U.S.C. § 3553(a), the Court should "impose a sentence sufficient, but not greater than necessary," to comply with the enumerated purposes of sentencing, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," and "the need for the sentence imposed - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment[10] for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other

---

[10] In the section of his sentencing position concerning the Section 3553(a) factors, defendant Johnson does not analyze any of the factors as applied to him, but instead fixates on Jamal Dunagan and the sentence he received in a separate case not before this Court. (Def.'s Pos. at 6-8). Putting aside the many overstated and inaccurate factual statements, legal conclusions, and speculative assumptions in that section, the sentence Dunagan received is irrelevant to this Court's determination of defendant Johnson's sentence. See United States v. Treadwell, 593 F.3d 990, 1011-12 (9th Cir. Jan. 28, 2010) ("Nor does it matter for the purposes of § 3553(a) that [defendant] can point to a specific criminal defendant . . . who may have received a lighter sentence for a different [crime]. A district court considers the § 3553(a) factors to tailor a sentence to the specific characteristics of the offense and the defendant."). Moreover, because Dunagan's case was before a different court for a different offense, this Court is not privy to the considerations and factors that went into the ultimate determination of his sentence, making any consideration of Dunagan's sentence in fashioning the appropriate sentence for defendant Johnson impracticable. See id. at 1012 ("A district court need not, and, as a practical matter, cannot compare a proposed sentence to the sentence of every criminal defendant who has ever been sentenced before. Too many factors dictate the exercise of sound sentencing discretion in a particular case to make the inquiry [defendant] urges helpful or even feasible."). Accordingly, this Court should disregard defendant Johnson's attempt to deflect attention from his own criminal culpability.

correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). The government submits that a sentence of LIFE imprisonment is fully appropriate and consistent with the goals of sentencing set forth in 18 U.S.C. § 3553(a), particularly the need for specific and general deterrence and the need for the sentence to reflect the seriousness of defendant Johnson's crimes, to promote respect for the law, and to provide just punishment.

A.   Nature And Circumstances Of The Offense

Section 3553(a)(1) states that the Court shall consider the "nature and circumstances of the offense" in determining an appropriate sentence. There can be no more heinous act of violence than the taking of a human life, and there can be no more cold-blooded act than to murder a person for money. In this case, the crime that defendant Johnson committed can only be described as a cold-blooded ambush. Defendant Johnson and his co-conspirators gave Evelio Suarez, Jr. no warning, no opportunity to hand over the money, and no chance to protect himself. And by firing over 50 rounds towards the truck, which was parked in front of the bank where customers were lined up to use the ATM machine and going into and coming out of the bank, as well as the other armored truck guards (survivors Henry Perry and John DeCaprio), defendant Johnson and his co-conspirators endangered the lives of multiple other innocent people.

B.   History And Characteristics Of The Defendant

Section 3553(a)(1) also states that the Court shall consider the "history and characteristics of the defendant." Defendant Johnson himself admits that he is "not a saint." (PSR ¶ 97).

A brief review of his criminal history corroborates defendant Johnson's self-assessment.  Beginning at the age of 13, defendant Johnson has had multiple contacts with law enforcement ranging from vehicle theft to carrying concealed/loaded firearms to attempted murder.  (Id. ¶¶ 46-82).  While not all of these contacts resulted in charges being filed or convictions and thus, are not reflected in his criminal history category calculation, they nevertheless provide context that is relevant to an overall view of defendant Johnson's history.  Defendant Johnson's commission of escalating acts of violence while incarcerated both for this offense as well as prior offenses provides further context as to defendant Johnson's characteristics.  (Id. ¶¶ 9-11, 75-77).  The government respectfully submits that based on his documented criminal history and given the gravity of his criminal conduct in this case, defendant Johnson should be deemed to have forfeited his right to live in free society for a time commensurate with the harm he has caused.  Having taken a life, a sentence of LIFE imprisonment would achieve this purpose.

C. <u>Need For The Sentence Contemplated</u>

Section 3553(a)(2) states that the Court, when considering what sentence to impose, shall consider the "need for the sentenced imposed."  In this regard, the statute states that these factors shall include the need:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (c) to protect the public from further crimes of the defendant; and

        (D) to provide the defendant with needed educational or vocational training, medical care, or correctional treatment in the most effective manner.

Applying these considerations to defendant Johnson's case, a sentence of LIFE imprisonment is appropriate.  While defendant Johnson asserts that sending him to prison will not help him or society (PSR ¶ 27), the government disagrees.  There is an unquestionable need to protect the public from further criminal conduct by defendant Johnson.  As noted above, defendant Johnson has a long history of committing crimes involving firearms and escalating acts of violence.  Moreover, as the evidence established at trial, defendant Johnson pointed his firearm directly at Evelio Suarez, Jr., fired several rounds, and callously grabbed a bag of money from the armored truck as Mr. Suarez lay dying.  As defendant Johnson's conduct plainly demonstrates that he cannot conform his behavior with societal requirements,[11] defendant Johnson should be incarcerated for a sufficiently lengthy period to protect the public from the additional violent crimes that defendant Johnson has demonstrated a ready willingness to commit.

    Simply stated, defendant Johnson is a violent individual who the Bureau of Prisons will be forced to watch very carefully throughout his term of incarceration due to the continuing threat he poses to others, and the public should be protected from such an individual for the remainder of his natural life.  The

---

[11] Coupled with his inability to conform his behavior, defendant Johnson is also unable to take responsibility.  In fact, as been a pattern throughout his life, defendant Johnson constantly disclaims responsibility for his actions and instead constantly attempts to shift the blame to others for his choices.

government therefore respectfully asserts that a sentence of LIFE imprisonment is both reasonable and appropriate in this case, and is sufficient, but not greater than necessary, to achieve the sentencing goals of 18 U.S.C. § 3553(a).

## IV.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that defendant Antoine Johnson be sentenced to a term of LIFE IMPRISONMENT. This term would be comprised of 240 months as to Count One, 240 months as to Count Two, and LIFE as to Count Three, to run concurrently to each other. Finally, defendant Johnson should be ordered to pay $436,000 in mandatory restitution and $300 in special assessments.

DATED: July 20, 2010

Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

_____ /s/ _____
KAREN I. MEYER
ELIZABETH R. YANG
Assistant United States Attorneys

Attorney for Plaintiff
UNITED STATES OF AMERICA