**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANTOINE LAMONT JOHNSON, AKA O Killer, AKA OK, AKA Seal A, | No. 19-55717 |
| *Petitioner-Appellant*, | D.C. Nos. 2:16-cv-03419-RSWL 2:05-cr-00920-RSWL-2 |
| v. | |
| UNITED STATES OF AMERICA, | OPINION |
| *Respondent-Appellee*. | |

Appeal from the United States District Court
for the Central District of California
Ronald S.W. Lew, District Judge, Presiding

Argued and Submitted November 19, 2024
Pasadena, California

Filed June 3, 2025

Before: Johnnie B. Rawlinson, Morgan Christen, and
Anthony D. Johnstone, Circuit Judges.

Opinion by Judge Christen

# SUMMARY[*]

## 28 U.S.C. § 2255

The panel affirmed the district court's order denying
Antoine Johnson's motion pursuant to 28 U.S.C. § 2255
challenging     his     conviction     under     18     U.S.C.
§ 924(c)(1)(A)(iii) for the use and discharge of a firearm
causing death during a crime of violence.

Johnson argued that his § 924(c) conviction was
unlawful because intervening Supreme Court case law
invalidated § 924(c)'s residual clause and therefore the jury
must have based his conviction on invalid crime-of-violence
predicates. The district court denied Johnson's motion,
holding that his § 924(c) conviction was based on at least
one valid predicate pursuant to the elements clause: Hobbs
Act robbery. The district court also ruled that any error in
the jury instructions was harmless because no reasonable
juror could have found Johnson guilty of § 924(c) based
solely on his participation in the conspiracy to commit
Hobbs Act robbery and not commission of the robbery itself.

The panel affirmed the district court's ruling on two
alternative grounds. First, the panel held there was no error
in the jury instructions because the district court correctly
told the jury that it could rely on either of two valid predicate
crimes of violence: the direct commission of Hobbs Act
robbery or Hobbs Act robbery under a *Pinkerton* theory of
liability. Second, the panel concluded that even if the trial
court had instructed the jury that it could rely on one invalid

---

[*] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

predicate in addition to the valid theories of Hobbs Act robbery, the error would have been harmless on the facts of this case.

---

## COUNSEL

Jay L. Lichtman (argued), Los Angeles, California, for Petitioner-Appellant.

Suria M. Bahadue (argued), Assistant United States Attorney; Bram M. Alden and David R. Friedman, Assistant United States Attorneys, Chiefs, Criminal Appeals Section; E. Martin Estrada, United States Attorney; United States Department of Justice, Los Angeles, California; Elizabeth R. Yang, Assistant United States Attorney, Criminal Division, Human Rights and Special Prosecutions, United States Department of Justice, Washington, D.C.; for Respondent-Appellee.

**OPINION**

CHRISTEN, Circuit Judge:

Antoine Johnson appeals the district court's denial of his
motion to vacate, set aside, or correct his sentence pursuant
to 28 U.S.C. § 2255.   A jury convicted Johnson of
conspiracy to commit Hobbs Act robbery, Hobbs Act
robbery, and the use and discharge of a firearm causing death
during a crime of violence pursuant to 18 U.S.C.
§ 924(c)(1)(A)(iii), (j)(1).   The charges arose from the
robbery of an armored truck in which a guard was fatally
shot.  We affirmed Johnson's convictions on direct appeal.
In his § 2255 motion, Johnson argued that his § 924(c)
conviction was unlawful because intervening Supreme
Court case law invalidated § 924(c)'s residual clause and
therefore, Johnson reasoned, the jury must have based his
conviction on invalid crime-of-violence predicates.   The
district court denied Johnson's motion, holding that his
§ 924(c) conviction was based on at least one valid predicate
pursuant to the elements clause: Hobbs Act robbery.  The
district court also ruled that any error in the jury instructions
was harmless because no reasonable juror could have found
Johnson guilty of § 924(c) based solely on his participation
in the conspiracy to commit Hobbs Act robbery and not
commission of the robbery itself.

We affirm the district court's ruling on two alternative
grounds.   First, we hold there was no error in the jury
instructions because the district court correctly told the jury
that it could rely on either of two theories to show Hobbs Act
robbery, and Hobbs Act robbery qualifies as a predicate
crime of violence.      Second, we conclude that the

instructional error Johnson argues would have been harmless
on the facts of this case.[1]

# I

In our opinion resolving Johnson's direct appeal, we
recounted that on March 1, 2004, four assailants robbed "an
armored truck as it was making a cash delivery to a Bank of
America [branch] in South Central Los Angeles." *United
States v. Johnson*, 767 F.3d 815, 818 (9th Cir. 2014). One
participant acted as a getaway driver. "One of the assailants
was wearing a Rastafarian wig and at least one was wearing
gloves.    During the robbery, one of the armored truck
security guards was shot and killed." *Id.*   A grand jury
charged Johnson and three co-conspirators with conspiracy
to commit Hobbs Act robbery, Hobbs Act robbery, and the
use and discharge of a firearm causing death during a crime
of violence under § 924(c).[2]   Two of the co-defendants

---

[1] Johnson's brief on appeal also raises two uncertified claims that he
received ineffective assistance of counsel.  We construe an uncertified
issue raised on appeal as a motion to expand the certificate of
appealability, *Towery v. Schriro*, 641 F.3d 300, 311 (9th Cir. 2010). We
grant the motion if it raises a substantial question of the denial of a
constitutional right. 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 580 U.S.
100, 115 (2017).  Here, Johnson did not raise a substantial question that
he was denied effective assistance of counsel.     *See Strickland v.
Washington*, 466 U.S. 668, 687–95 (1984).   We therefore deny his
motion to expand the certificate.

[2] *See* 18 U.S.C. § 1951(a) ("Whoever in any way or degree obstructs,
delays, or affects commerce or the movement of any article or
commodity in commerce, by robbery or extortion or attempts or
conspires so to do, or commits or threatens physical violence to any
person or property in furtherance of a plan or purpose to do anything in
violation of this section shall be fined under this title or imprisoned not
more than twenty years, or both."); 18 U.S.C. § 924(c)(1)(A)(iii) ("[A]ny
person who, during and in relation to any crime of violence . . . uses or

pleaded guilty and did not testify at trial. The government
tried Johnson with the remaining co-conspirator, Michael
Williams. *Id.* Williams filed a separate motion pursuant to
28 U.S.C. § 2255 that we decide in a separate disposition.

The primary issue at trial was whether Johnson was one
of the robbers. The surviving armored truck guard testified
that one of the robbers was wearing a "red, green, black,
yellow" hat with "dreadlocks hanging from under the hat."
This witness described the wig-wearing robber running up
to the truck and shooting a "handgun." The bank assistant
manager testified that she saw a robber wearing a "Jamaican-
type" cap carrying an "Uzi." The gun she identified at trial
is a similar model to a gun recovered later and linked to the
robbery. Additional eyewitnesses testified that they saw the
robbers running away from the armored truck carrying guns
and dropping the wig and gloves as they ran.

The police recovered the wig in the path of the robbers'
escape and were able to collect several hairs from it. Four
of the hairs were tested for DNA. The jury heard testimony
explaining that the DNA detected in the hair samples
generated a "1 in 100 quadrillion" statistical match for
Johnson's DNA.

The government also introduced evidence that Johnson
was a member of a gang led by Jamal Dunagan. Dunagan
testified that he met Johnson the day after the robbery
because one of the robbery organizers was concerned that
Johnson would not come forward with his portion of the
proceeds. According to Dunagan, Johnson said he was not

---

carries a firearm . . . shall, in addition to the punishment provided for
such crime of violence . . . if the firearm is discharged, be sentenced to a
term of imprisonment of not less than 10 years.").

going to give anyone else money from the robbery because
the others had left him behind when they escaped. Dunagan
also testified that Johnson told him that he had accidentally
shot himself in the foot while running away from the crime
scene.

Defense counsel impeached Dunagan's credibility on
cross-examination. Before the jury, Dunagan admitted to:
(1) being a prior cooperator in a federal drug trafficking
investigation; (2) lying under oath and suborning perjury in
a prior case; (3) routinely lying to police; and (4) specifically
contacting law enforcement about fellow gang members
against whom he held grudges. The defense also called two
medical professionals who testified that they had examined
Johnson one month and four years after the robbery,
respectively, and observed no indication that Johnson had
suffered a gunshot wound to his foot.[3]

One of the government's witnesses, Veronica Burgess,
could not be located for trial. The court nevertheless
admitted her grand jury testimony because it ruled that the
government proved by a preponderance of the evidence that
Johnson caused her unavailability by threatening her.
*Johnson*, 767 F.3d at 818–19. A law enforcement witness
read Burgess's grand jury testimony aloud to the jury. In it,
Burgess explained that she overheard Johnson and others
planning the robbery in a restaurant a few days before the

---

[3] An emergency room nurse who treated Johnson for a head and neck
injury after a minor car accident approximately one month after the
robbery testified that she did not observe Johnson had a gunshot wound
to his foot while checking for sensation in his extremities. The
professional who examined Johnson's foot four years after the robbery
testified that, after viewing x-rays and conducting a physical
examination, she saw no evidence he had ever suffered a gunshot wound
to that area.

robbery occurred.  The jury also heard testimony that in
several earlier interviews with law enforcement, Burgess
gave a variety of inconsistent statements about who she was
with when she allegedly overheard the conversation in the
restaurant, the date and time of the meeting in the restaurant,
and which co-conspirators were present.  Finally, the jury
heard that Burgess had told the grand jury that a friend of
hers was with her when she overheard the conspirators'
planning meeting in the restaurant, but that friend testified at
trial that she was not at the restaurant and did not overhear
the meeting Burgess described.

At the close of evidence, the district court instructed the
jury on three counts: Count One was conspiracy to commit
Hobbs Act robbery.  Count Two was Hobbs Act robbery.
For this count, the district court instructed the jury that it
could convict on either of two theories of liability: (1) the
defendant committed the robbery himself; or (2) the
defendant was guilty of Hobbs Act robbery under a
*Pinkerton* theory of liability.[4]

Count Three charged Johnson with using a firearm
during a crime of violence pursuant to § 924(c).  For Count
Three, Jury Instruction 18 directed the jury that it could
convict based on one of two theories of liability: by finding
that Johnson committed the crime of violence himself, or by
finding that Johnson was "part of a conspiracy as charged in
Count One, during or in furtherance of which occurred the
reasonably foreseeable crime of robbery and the knowing

---

[4] A co-conspirator can be held liable for a substantive offense committed
by another member of a conspiracy if the offense was within the scope
of the conspiracy, committed in furtherance of the conspiracy, and a
reasonably foreseeable consequence of the conspiracy.  *Pinkerton v.
United States*, 328 U.S. 640, 647 (1946).

use of the firearm during and in relation to that crime." The
court instructed the jury that Hobbs Act robbery is a crime
of violence.

Jury Instruction 19 contained further instructions on the
elements necessary to find Johnson guilty of the § 924(c)
offense based on his involvement in the conspiracy.
Specifically, it instructed the jury that, to convict, the
government must have proven five elements beyond a
reasonable doubt:

> First, a person named in Count Three of the
> Indictment committed the crime of robbery
> and knowingly used the firearm during and in
> relation to that crime;

> Second, the person was a member of the
> conspiracy charged in Count One of the
> Indictment;

> Third, the person committed the crime of
> robbery and knowingly used the firearm
> during and in relation to that crime in
> furtherance of the conspiracy;

> Fourth, the defendant was a member of the
> same conspiracy at the time the offense
> charged in Count Three was committed; and

> Fifth, the offense fell within the scope of the
> unlawful agreement and could reasonably
> have been foreseen to be a necessary or
> natural consequence of the unlawful
> agreement.

The jury found Johnson guilty on all three counts, but its
general verdict did not specify whether it convicted Johnson

of § 924(c) based on his own conduct or based on his
participation in the conspiracy.  The district court sentenced
Johnson to 240 months on Count One and 240 months on
Count Two, for a total of 480 months to be served
consecutively.  On Count Three, the court sentenced Johnson
to life in prison.

Johnson appealed his convictions.  On direct appeal, he
argued that Burgess's out-of-court grand jury testimony
should not have been admitted because the government had
not shown by clear and convincing evidence that he caused
Burgess's absence at trial.  *Johnson*, 767 F.3d at 819–20.
We affirmed Johnson's convictions on direct appeal, holding
that the government had met its burden to show that Johnson
threatened Burgess and caused her unavailability by a
preponderance of the evidence.  *Id.* at 822–23.

Johnson filed this § 2255 motion in 2016.  The district
court denied it in April 2019 after several delays and
extensions in the briefing schedule.  In the motion, Johnson
argued that his § 924(c) conviction should be reversed
because the district court's instructions allowed the jury to
convict on Count Three based on conspiracy to commit
Hobbs Act robbery, and Johnson argued that conspiracy to
commit Hobbs Act robbery does not qualify as a "crime of
violence."  The district court acknowledged there were cases
pending before the Supreme Court and our court that would
likely resolve whether conspiracy to commit Hobbs Act
robbery qualifies as a crime of violence for purposes of
§ 924(c).  But the court denied Johnson's motion because it
concluded that Hobbs Act robbery, Count Two, does qualify
as a crime of violence and, even if the jury interpreted the
instructions to mean that the Count One conspiracy
conviction could serve as a § 924(c) predicate, that error
would have been harmless on the facts of Johnson's case.

On the latter point, the district court reasoned that the conspiracy charged in Count One "was inextricably intertwined with, and in furtherance of, the substantive Hobbs Act robbery" and "it makes little sense that [Johnson] could have only discharged a firearm in the conspiracy but not the substantive Hobbs Act robbery."

Johnson filed a timely appeal, and our court granted a certificate of appealability (COA) on one issue: "whether [Johnson's] conviction and sentence for violating 18 U.S.C. § 924(c) must be vacated because neither conspiracy to commit Hobbs Act robbery, nor Hobbs Act robbery based on a *Pinkerton* theory of liability, is a qualifying predicate crime of violence."

Johnson's § 2255 appeal was stayed pending the resolution of a related case, *United States v. Dominguez (Dominguez I)*, 954 F.3d 1251 (9th Cir. 2020). In *Dominguez I*, we held that both *attempted* Hobbs Act robbery and Hobbs Act robbery qualify as crimes of violence under § 924(c)'s elements clause. *Domiguez I*, 954 F.3d at 1260–62. The Supreme Court vacated *Dominguez I* after it ruled in *United States v. Taylor*, 596 U.S. 845, 851–52 (2022), that attempted Hobbs Act robbery is not a crime of violence. *Dominguez v. United States*, 142 S. Ct. 2857 (2022) (granting certiorari and vacating judgment). We then vacated Dominguez's § 924(c) convictions that were based on attempted Hobbs Act robbery but reaffirmed that Hobbs Act robbery qualifies as a crime of violence under § 924(c)'s elements clause. *United States v. Dominguez* (*Dominguez II*), 48 F.4th 1040 (9th Cir. 2022). After *Dominguez II* was resolved, we lifted the stay in this appeal. Before Johnson filed his opening brief, we decided *United States v. Eckford*, 77 F.4th 1228 (9th Cir. 2023), and again held that Hobbs Act

robbery qualifies as a crime of violence under § 924(c)'s
elements clause. *Id.* at 1236.

## II

We review "de novo a district court's denial of relief to
a federal prisoner under 28 U.S.C. § 2255." *United States v.
Swisher*, 811 F.3d 299, 306 (9th Cir. 2016) (en banc).  We
may affirm the denial of a writ of habeas corpus on any
ground supported by the record. *Holley v. Yarborough*, 568
F.3d 1091, 1098 (9th Cir. 2009).  We review "de novo
whether a criminal conviction is a 'crime of violence' and
whether a jury instruction misstated the elements of an
offense." *United States v. Begay*, 33 F.4th 1081, 1087 (9th
Cir. 2022) (en banc) (quoting *United States v. Benally*, 843
F.3d 350, 353 (9th Cir. 2016)).

## III

Johnson continues to challenge his conviction for using
a firearm while committing a crime of violence pursuant to
§ 924(c), but given some of the intervening case law
published since he originally filed his § 2255 motion,
Johnson now argues that his § 924 conviction was
potentially based on an invalid predicate crime of violence
because *neither* Hobbs Act robbery under a *Pinkerton* theory
of liability nor conspiracy to commit Hobbs Act robbery are
valid predicate crimes of violence under § 924(c)'s elements
clause.[5]

_____

[5] Johnson also preserves his arguments that Hobbs Act robbery is not a
crime of violence.  As an initial matter, the COA does not cover whether
Hobbs Act robbery is a crime of violence, and we decline to expand the
COA on this issue because binding precedent from our circuit controls
the question.  28 U.S.C. § 2253(c)(2); *see Buck*, 580 U.S. at 115.  As
noted, in *United States v. Eckford*, we affirmed that Hobbs Act robbery

The government's position has also changed since the time Johnson first filed his motion.  It now concedes that conspiracy to commit Hobbs Act robbery is not a valid predicate crime of violence for purposes § 924(c)'s elements clause.  *See United States v. Reed*, 48 F.4th 1082, 1088 (9th Cir. 2022).  But the government maintains its position that Johnson's § 924(c) conviction was supported by his conviction for Hobbs Act robbery, either by direct commission of the robbery or on a *Pinkerton* theory of liability.  Thus, the remaining substantive issue before the panel is whether Hobbs Act robbery under a *Pinkerton* theory of liability qualifies as a valid predicate crime of violence for purposes of § 924(c).

In addition to their substantive legal dispute about which crimes can serve as § 924(c) predicates, the parties also disagree about which predicate crimes were identified in the district court's jury instructions.  We hold that the jury instructions allowed the jury to convict Johnson of § 924(c) based on either of two valid predicates: Hobbs Act robbery or Hobbs Act robbery under a *Pinkerton* theory of liability. The instructions for Count Three described both of these theories.

**A**

Section 924(c) imposes additional punishment for "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm."  Section 924(c) defines "crime of violence" as a felony that "(A) has as an element the use, attempted use, or threatened use of physical force

---

qualifies as a crime of violence pursuant to § 924(c)'s elements clause.
77 F.4th at 1232–36.

against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3). The first clause is typically referred to as "the elements clause" and the second clause is referred to as "the residual clause."

In *United States v. Davis*, 588 U.S. 445, 469 (2019), the Supreme Court held that § 924(c)'s residual clause is unconstitutionally vague. Therefore, to qualify as a crime of violence and support a conviction under § 924(c), an offense must meet the requirements of the elements clause. We apply the categorical approach to determine whether a crime fits the federal definition of a "crime of violence." *See Taylor*, 596 U.S. at 860. Here, the government was required to show that at least one of Johnson's convictions had as an element the use, attempted use, or threatened use of force. *Id.*

Johnson argues that Hobbs Act robbery under a *Pinkerton* theory of liability does not qualify as a predicate crime of violence capable of supporting a § 924(c) conviction. We disagree.

In *United States v. Henry*, 984 F.3d 1343, 1356 (9th Cir. 2021), we affirmed long-standing precedent establishing that *Pinkerton* attaches liability for substantive crimes that are reasonably foreseeable in furtherance of a conspiracy, including § 924(c) offenses. The defendant in *Henry* was a member of a group that committed a series of armed bank robberies, but he remained outside of the banks during the commission of the crimes. *Id.* at 1347–48. In *Henry*, we recognized that *Davis* held that the residual clause in § 924(c) is unconstitutionally vague but went on to hold that an armed bank robbery conviction proved through a

*Pinkerton* theory of liability can still serve as a valid
predicate crime of violence supporting a § 924(c) conviction
under the elements clause. *Id*. at 1355–56. We reasoned
that, because *Pinkerton* serves to attach liability for the
commission of a substantive crime, the relevant
consideration in *Henry* was whether the substantive crime
committed in furtherance of the conspiracy (armed bank
robbery) qualified as a crime of violence. *See id*. To answer
that question, we asked whether the armed bank robbery had
as an element the use or threatened use of physical force—
not whether the conspiracy to commit armed bank robbery
was itself a crime of violence.[6] *Id.* at 1355.

Applying *Henry*'s reasoning to Johnson's case, the
relevant *Pinkerton* predicate is Hobbs Act robbery because
that is the substantive crime committed in furtherance of the
conspiracy charged in the indictment. Because Hobbs Act
robbery is a crime of violence, *Eckford*, 77 F.4th at 1236,
Hobbs Act robbery under a *Pinkerton* theory of liability is a

---

[6] Four other circuits have addressed whether finding a defendant guilty
of a predicate crime of violence through a theory of *Pinkerton* liability
remains valid after *Davis*, and all have come to the same conclusion.
*Gomez v. United States*, 87 F.4th 100, 109–10 (2nd Cir. 2023) (noting
"that *Pinkerton* liability does not somehow transform a conviction for
substantive bank robbery into one for bank robbery conspiracy" because
the conviction is for the substantive offense); *United States v. Woods*, 14
F.4th 544, 552 (6th Cir. 2021) ("Finding the [defendants] guilty through
a theory of *Pinkerton* liability is still permissible as long as the
underlying predicate offenses qualify as crimes of violence under the
§ 924(c) elements clause."); *United States v. Gillespie*, 27 F.4th 934,
941–42 (4th Cir. 2022) ("It was precisely this still-valid theory of
*Pinkerton* liability that the jury embraced when finding Gillespie guilty
of the challenged § 924(c) conviction."); *United States v. Hernández-
Román*, 981 F.3d 138, 145 (1st Cir. 2020) ("We have held that where, as
here, *Pinkerton* liability is in play, the defendant does not need to have
carried the gun himself to be liable under section 924(c).").

valid predicate crime of violence for purposes of § 924(c). *Henry*, 984 F.3d at 1356.

Johnson attempts to avoid *Henry* by arguing that intervening decisions from the Supreme Court and our court sitting en banc are clearly irreconcilable with *Henry*'s reasoning and implicitly overrule it. *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc); *Overstreet v. United Broth. Carpenters & Joiners Am., Loc. Union No. 1506*, 409 F.3d 1199, 1205 n.8 (9th Cir. 2005). Specifically, Johnson argues that *Henry* was implicitly overruled by *Borden v. United States*, 593 U.S. 420 (2021), *United States v. Taylor*, 596 U.S. 845 (2022), and *Alfred v. Garland*, 64 F.4th 1025 (9th Cir. 2023) (en banc).[7]

Johnson fails to persuade us that any of these cases, individually or combined, implicitly overrule *Henry*. *Borden* addressed only the mens rea necessary to show that the use of force was sufficiently directed "against the person of another" to constitute a crime of violence. *Borden*, 420 U.S. at 430–38 (Kagan, J., plurality opinion). And, contrary to Johnson's argument, *Taylor* did not create a rule that the government must show the defendant *personally* used force in order to commit a crime of violence. Rather, *Taylor* held that the government must prove that the use of force is an element of the predicate offense. *Taylor*, 596 U.S. at 850–52. *Taylor* does not conflict with *Henry*, because *Henry* holds that the government must prove that at least one conspirator committed all of the elements of the underlying

---

[7] Johnson also points to *Rosemond v. United States*, 572 U.S. 64 (2014), and *Honeycutt v. United States*, 581 U.S. 443 (2017) as grounds for overturning *Henry*. These arguments fail because *Rosemond* and *Honeycutt* were decided before *Henry*, and *Henry* addressed both cases. *Henry*, 984 F.3d at 1355, 1356–57.

crime of violence, including the use of force, when it relies
on a *Pinkerton* theory. *Henry*, 984 F.3d at 1355.

Neither is *Henry* clearly irreconcilable with *Alfred*.
*Alfred* addressed whether a state conviction that could have
been based on either the direct commission of an underlying
offense, or aiding and abetting the commission of the
offense, qualifies as an "aggravated felony" for purposes of
the Immigration and Nationality Act (INA). *Alfred*, 64 F.4th
at 1030–37 (Bybee, J., plurality opinion). The plurality
opinion in *Alfred* suggests that when conducting a
categorical analysis, the court should examine whether the
defendant was convicted as either a principal or an
accomplice to determine if there is a categorical match with
the federal definition because the elements the government
must prove for accomplice liability under federal law often
vary from the elements required under state law. *Alfred*, 64
F.4th at 1030–37 (Bybee, J., plurality opinion). This is
especially true regarding the required mens rea. *Id. Alfred*'s
concerns about potential categorical overbreadth based on
accomplice liability do not apply when a defendant is
convicted under a *Pinkerton* theory, because *Pinkerton*
requires proof that at least one co-conspirator satisfied all
elements of the crime committed in furtherance of the
conspiracy, including the necessary mens rea. Because the
government must prove all elements of the relevant crime of
violence when it relies on a *Pinkerton* theory, *Henry*, 984
F.3d at 1355, *Alfred* is not clearly irreconcilable with *Henry*.

None of the cases cited by Johnson undermine *Henry*'s
reasoning that it is the substantive crime that is the relevant
unit of analysis when applying a *Pinkerton* theory of liability
in the § 924(c) context. *Id.* at 1355*.* In keeping with *Henry*'s
reasoning, we conclude that Hobbs Act robbery under a
*Pinkerton* theory is a valid crime-of-violence predicate.

**B**

The parties agree that Jury Instruction 18 told the jury
that one way it could convict Johnson of using a firearm
during the course of a crime of violence in violation of
§ 924(c) was by finding that he committed Hobbs Act
robbery himself.    The parties' disagreement centers on
whether the instructions also gave the jury the option of
relying on conspiracy to commit Hobbs Act robbery—an
offense the parties agree is *not* a crime of violence—or
Hobbs Act robbery based on a *Pinkerton* theory of liability,
an offense that we have now established is a crime of
violence.

The government argues that the jury instructions
correctly informed the jury that Hobbs Act robbery based on
a *Pinkerton* theory of liability could serve as an alternative
predicate crime of violence for the § 924(c) charge. Johnson
reads the instructions differently.  He maintains that the jury
instructions incorrectly directed that Count One, conspiracy
to commit Hobbs Act robbery, could serve as an alternative
predicate crime of violence for the § 924(c) conviction. We
agree with the government.

The jury instructions for the § 924(c) charge directed the
jury that it could convict if it found that Johnson committed
Hobbs Act robbery under a *Pinkerton* theory of liability.
Instruction 18 told the jury that it could find the defendants
guilty of § 924(c) if they were "part of a conspiracy as
charged in Count One, during or in furtherance of which
occurred the reasonably foreseeable crime of robbery and the
knowing use of the firearm during and in relation to that
crime."    Instruction 19 elaborated by identifying the
elements necessary to convict Johnson of § 924(c) based on
his participation in the conspiracy, and those elements are

the same elements required for attaching liability for a substantive crime to a member of a conspiracy under *Pinkerton.  See United States v. Allen*, 425 F.3d 1231, 1234 (9th Cir. 2005) (citing *Pinkerton*, 328 U.S. at 647).  Indeed, Instruction 19 was based on the pattern instructions for *Pinkerton* liability.  Ninth Cir. Jury Instructions Comm., Manual of Model Criminal Jury Instructions, at 230 (2022). Read together, the instructions informed the jury that Hobbs Act robbery under a *Pinkerton* theory of liability could serve as a predicate crime of violence.

Johnson is correct that conspiracy to commit Hobbs Act robbery could not have served as a predicate crime of violence for the § 924 charge because the robbers could have completed the crime of *conspiring* to rob the armored truck without actually robbing it.  *See Reed*, 48 F.4th at 1087–88. But Johnson's argument fails because the instructions did not allow the jury to convict Johnson of § 924(c) solely based on his participation in the conspiracy charged in Count One.  Rather, in order to convict Johnson of § 924(c), the instructions required the jury to find that a member of the conspiracy committed Hobbs Act robbery under either of the two alternative theories: directly or via a *Pinkerton* theory. If the jury convicted based on Johnson's participation in the conspiracy, the instructions required the jury to also find that the robbery was reasonably foreseeable as a "necessary or natural consequence" of the conspiracy and that a member of the conspiracy committed all elements of Hobbs Act robbery.  This is *Pinkerton* liability.

Contrary to Johnson's argument, the jury instructions directed the jury that it could convict Johnson of the § 924(c) charge based on either Hobbs Act robbery or Hobbs Act robbery under a *Pinkerton* theory of liability, and both are

valid predicate crimes of violence for § 924(c).    We
conclude there was no error in the jury instructions.

## IV

We also hold that the instructional error Johnson argues
would have been harmless on the facts of this case.  We reach
this alternative ground because we are cognizant of the
government's change in position from the one it advanced in
the district court.[8]  The general verdict does not specify the
grounds the jury relied upon to convict Johnson of the
§ 924(c) charge, but on the facts of this case, we agree with
the district court that even if the jury interpreted the
instructions to *also* allow the § 924(c) charge to be premised
on conspiracy to commit the robbery, that error would have
been harmless.

"A conviction based on a general verdict is subject to
challenge if the jury was instructed on alternative theories of
guilt and may have relied on an invalid one."  *Hedgpeth v.*

---

[8] In the district court, the government assumed the premise of Johnson's
argument: that the jury instructions allowed the jury to rely on conspiracy
to commit Hobbs Act robbery as a predicate crime supporting the
§ 924(c) charge.  The government argued this was not error because
conspiracy to commit Hobbs Act robbery qualifies as a crime of violence
pursuant to the residual clause of § 924(c).  On appeal, the government
concedes its position in the district court was wrong as a matter of
substantive law, because conspiracy to commit Hobbs Act robbery is not
a crime of violence.  The government also concedes that it misinterpreted
the jury instructions in the opposition it filed to Johnson's § 2255 motion
in the district court.  On appeal, the government argues that Instruction
19 contained a *Pinkerton* instruction.  Johnson was the first party to raise
whether a *Pinkerton* theory of liability could support a § 924(c) charge.
He raised this issue in his reply brief in support of the § 2255 motion
before the district court.  Johnson also had the opportunity to counter the
government's revised argument about the contents of the jury
instructions in the reply brief he filed before our court.

*Pulido*, 555 U.S. 57, 58 (2008) (per curiam).  In reviewing
an instructional error at the habeas stage, this court applies
harmless error review, and the reviewing court "should ask
whether the flaw in the instructions 'had substantial and
injurious effect or influence in determining the jury's
verdict.'" *Id.* (quoting *Brecht v. Abrahamson*, 507 U.S. 619,
623 (1993)).  "The task is to evaluate the effect of the error
on the jury, rather than merely whether the evidence points
to guilt." *Reed*, 48 F.4th at 1090.

We recently confirmed that the harmless error standard
applies on habeas review when a jury is "instructed on both
a valid and an invalid predicate offense and [the general
verdict] fails to specify which predicate form[ed] the basis
for a § 924(c) conviction." *Id.*  The defendant in *Reed* was
accused of planning to rob a drug stash house with the intent
to steal and resell cocaine. *Id.* at 1085–86.  The district court
instructed the jury on two potential predicates for the
§ 924(c) charge: a valid drug crime predicate and conspiracy
to commit Hobbs Act robbery. *Id.* at 1086.  We held that
instructing the jury on the invalid predicate was harmless
because the conspiracy in *Reed* was "inextricably
intertwined" with the valid predicate offense. *Id*. at 1090
(quoting *United States v. Cannon*, 987 F.3d 924, 932 (11th
Cir. 2021)).  *Reed* reasoned that because there was only one
course of conduct alleged at trial, "no rational juror could
have found that [defendants] carried a firearm in relation to
one predicate but not [in relation to] the other." *Id.* (quoting
*Cannon*, 987 F.3d at 948).[9]

---

[9] The Fourth Circuit and Seventh Circuit have applied similar logic on
direct appeal when reviewing cases in which the jury instructions
included both valid substantive Hobbs Act robbery and invalid
conspiracy to commit Hobbs Act robbery predicates. *United States v.*

We reach the same result here.  Even if the trial court in
Johnson's case had instructed the jury that it could rely on
one invalid predicate in addition to the valid theories of
Hobbs Act robbery, the error would have been harmless on
the facts of this case.  Pointing to Burgess's discredited
testimony, Johnson's basic argument is that a juror "could
have decided that Mr. Johnson was present at the planning
meeting and thereby joined the conspiracy to rob the
armored truck," but did not participate in the robbery, and
thus the § 924(c) conviction would be based only on the
invalid predicate of conspiracy.  In part, this argument is
premised on Johnson's contention that Hobbs Act robbery
based on a *Pinkerton* theory of liability is not a valid
predicate for a § 924(c) conviction.  We have rejected this
argument as a matter of substantive law.

Separately, we agree with the district court that the facts
in this case do not support Johnson's argument that a juror
could have relied on only the conspiracy charge to support
the § 924(c) conviction.  To be sure, strong circumstantial
evidence introduced at trial made it clear that the robbery
was planned and coordinated.  The actions of the robbers
demonstrated that the robbery was a planned operation
because multiple participants brought weapons, staged
getaway vehicles, and wore disguises to conceal their

---

*Ali*, 991 F.3d 561, 575–76 (4th Cir. 2021) (holding defendant could not
show the "outcome would have been different absent the improper
instruction" given the weight of the evidence that he perpetrated the
robbery); *Reyes v. United States*, 998 F.3d 753, 759 (7th Cir. 2021)
(noting even if there was instructional error, "[n]o rational juror could
have concluded that the gun was brandished in furtherance of only the
conspirators' agreement to commit a robbery, but not in furtherance of
the robbery itself, during which the gun was actually brandished").

identities. This and direct eyewitness testimony supports the conclusion that the robbers conspired in advance.

But in Johnson's direct appeal, we characterized the evidence of Johnson's participation in the robbery as "strong." It included Dunagan's testimony, eyewitness testimony, and DNA evidence linking the Rastafarian wig to Johnson. *Johnson,* 767 F.3d at 820. Johnson argues the jury could not have relied on Dunagan's testimony about his participation in the robbery because Dunagan's credibility was thoroughly impeached. We disagree. The jury was free to believe all or none that testimony, and considerable other evidence linked Johnson to the robbery, including DNA evidence from the wig and eyewitness testimony recounting that a robber wearing the Rastafarian wig fired shots into the back of the armored truck at the security guard.

Johnson's two remaining arguments do not persuade us that any instructional error could have prejudiced him. First, Johnson contends the prosecutor emphasized the robbers' conspiracy in closing arguments. This challenge fails because the record clearly shows that the government's main theory and focus of its closing argument was that Johnson was one of the co-conspirators who directly participated in the robbery of the armored truck and that he personally shot and killed the guard. Second, Johnson is correct that the length of jury deliberations can indicate that an error had a substantial impact on the outcome of a trial, but this factor is not dispositive. *See, e.g., Parker v. Gladden*, 385 U.S. 363, 364–65 (1966) (finding that bailiff's statements that defendant was guilty prejudiced jury, because one juror testified that she was influenced by the statement and the jury deliberated for 26 hours).

24                          JOHNSON V. USA

Overall, we agree with the district court's conclusion that
any instructional error would have been harmless.   No
reasonable juror could have concluded that a conspirator
fired a gun only in furtherance of the conspiracy, because, as
the district court observed, "no evidence was produced at
trial suggesting that firearms were used in the conspiracy,
but not in the substantive offense."   Moreover, we agree with
the district court that Johnson's theory—that the jury relied
on the shaky Burgess testimony as the basis for its
convictions and ignored the evidence incriminating him in
the underlying robbery—"would be a stretch beyond the
bounds of rationality."   Therefore, we conclude that even if
the jury instructions had included an invalid predicate crime
of violence, that error would be harmless on the facts of this
case.

The district court's order denying Johnson's § 2255
motion is **AFFIRMED.**